

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 12, 2024**

_____
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CHRISTOPHER GUY LYSTER, | § | CASE NO. 24-40460-MXM-7 |
| | § | |
| DEBTOR | § | CHAPTER 7 |

**MEMORANDUM OPINION
AND ORDER SUSTAINING, IN PART, AND OVERRULING, IN PART,
LW HOLDCO V LLC'S OBJECTION TO EXEMPTIONS**
[*Relates to ECF No. 30*]

Before the Court is the Objection to Exemptions[1] filed by LW Holdco V LLC ("***Creditor***") to certain of the exemptions claimed by Christopher Guy Lyster ("***Debtor***"). Specifically, Creditor objects to (i) Debtor's claimed homestead exemption contending that part of Debtor's homestead

---

[1] *Amended LW Holdco V LLC's Objection to Claimed Exemption of Debtor, Christopher Guy Lyster, in Homestead and Claimed Personal Property Exemptions*, ECF No. 30 (the "***Objection to Exemptions***").

exemption is subject to the $189,050 cap under 11 U.S.C. § 522(p)(1) (the "**Homestead Objection**");[2] and (ii) Debtor's claimed personal property exemptions contending that such exemptions are not "listed separately with sufficient detail to put the trustee and interested parties on notice of questionable claims"[3] (the "**Personal Property Objection**").

The Court has reviewed and considered the Objection to Exemptions, Debtor's Response,[4] Debtor's Brief,[5] Creditor's Reply,[6] testimony of Debtor, exhibits admitted into evidence, and the arguments of counsel. For reasons detailed below, the Court **SUSTAINS**, in part, Creditor's Homestead Objection[7] and **OVERRULES** Creditor's Personal Property Objection.

## I. JURISDICTION

The Court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334 and the standing order of reference in this district. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), and (O). The Court has statutory and constitutional authority to enter a final order in this contested matter. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

This Order constitutes the Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, which is incorporated by Fed. R. Bankr P. 7052 and 9014.[8]

---

[2] Objection to Exemptions, pgs. 11–18, ¶¶ 29–40.
[3] Objection to Exemptions, pgs. 18–19, ¶¶ 41–42 (quoting *in re Doyle*, 209 B.R. 897, 901 (Bankr. N.D. Ill. 1997) (internal citations and quotations omitted)).
[4] *Response to Amended LW Holdco V LLC's Objection to Claimed Exemptions of Debtor, Christopher Guy Lyster, in Homestead and Claimed Personal Property Exemptions*, ECF No. 36 (the "**Debtor's Response**").
[5] *Christoper Guy Lyster's Brief in Support of Response to LW Holdco V LLC's Amended Objection to Claimed Exemptions of Debtor, Christopher Guy Lyster, in Homestead and Claimed Personal Property Exemptions*, ECF No. 40 (the "**Debtor's Brief**").
[6] *Reply Brief to Christopher Guy Lyster's Brief in Support of Response to LW Holdco V LLC's Amended Objection to Claimed Exemptions of Debtor, Christopher Guy Lyster, in Homestead and Claimed Personal Property Exemptions*, ECF No. 41 (the "**Creditor's Reply**").
[7] At the commencement of the hearing on the Homestead Objection, Debtor and Creditor agreed to bifurcate the hearing and abate a determination of the value of the Meadow Hill Property and its impact, if any, on the Homestead Objection until after the Court issued this ruling.
[8] Any findings of fact that should more appropriately be characterized as a conclusion of law should be regarded as such, and *vice versa*.

2

## II. FINDINGS OF FACT

**A. Debtor's Meadow Hill Property**

On April 14, 2010, Debtor, who was single at the time, and Ms. Monika Cooper ("***Ms. Cooper***"), also single at the time, purchased two adjoining individual tracts of land totaling 7.393 acres in Parker County, Texas.[9] The two adjoining tracts were then replatted into a single real estate tract.

On June 12, 2010, Debtor and Ms. Cooper were married.[10] Thereafter, in 2011, Debtor and Ms. Cooper began construction of their home on the 7.393-acre tract of land (the "***Meadow Hill Property***").[11] After completing the construction of the home in 2012, Debtor and Ms. Cooper moved into and lived in the Meadow Hill Property as their homestead.

**B. Creditor's Claim Against Debtor**

In 2018, Debtor was a member of the law firm Puls Haney Lyster P.L.L.C. (the "***Puls Law Firm***"). On August 6, 2018, Creditor and the Puls Law Firm entered into a *Pre-Paid Forward Purchase and Sale Agreement* (the "***Investment Agreement***"),[12] in which Creditor agreed to provide litigation funding to the Puls Law Firm. Additionally, the three partners of the Puls Law Firm at that time, which included the Debtor (together, the "***Guarantors***"), entered into a *Guaranty and Agreement*,[13] in which the Guarantors, in their personal capacities, guaranteed the Puls Law Firm's obligations under the Investment Agreement.

Creditor contends that it provided more than $3.2 million in litigation funding to the Puls Law Firm between August 2018 and December 2019.[14] Thereafter, disputes arose between

---

[9] Creditor Exs. 1 and 2.
[10] Creditor Ex. 14 at pg. 2.
[11] Objection to Exemptions at pg. 4, ¶ 5; *see also* Testimony of Debtor [1:55:00].
[12] Creditor Ex. 19 at pg. 11.
[13] Creditor Ex. 19 at pg. 72.
[14] Objection to Exemptions at pg. 7, ¶ 14. *See also* Debtor's Brief at pg. 4, ¶ 12.

Creditor and the Puls Law Firm and Guarantors culminating in Creditor filing a lawsuit on August 5, 2021, in a New York State Court[15] against the Puls Law Firm and Guarantors.

Debtor filed an answer and counterclaim in the New York Case. Debtor contends, in part, that (i) he "vigorously" contests the Creditor's claims against him;[16] (ii) he did not work directly on any of the litigation matters that were funded by Creditor;[17] and (iii) he had withdrawn from the Puls Law Firm in August 2020.[18] After Debtor withdrew from the Puls Law Firm, the firm eventually dissolved and ceased operations.[19] Meanwhile, Debtor and Ms. Cooper formed Cooper & Lyster, PLLC,[20] which continues to exist.

The New York Case is currently pending but is stayed against Debtor by the § 362 automatic stay in Debtor's bankruptcy case.[21]

## C. Debtor and Ms. Cooper Divorce

On November 10, 2022, Ms. Cooper filed a Divorce Proceeding[22] against Debtor. Debtor testified, credibly, that he and Ms. Cooper (i) were represented by separate counsel in the Divorce Proceeding; (ii) exchanged appraisals and inventories of assets; and (iii) engaged in many negotiations concerning the division and partition of the marital estate.

On August 29, 2023, Debtor and Ms. Cooper entered into an *Agreement Incident to Divorce* (the "***Divorce Agreement***").[23] The Divorce Agreement details the division and partition of Debtor's and Ms. Cooper's entire marital estate. The Divorce Agreement also provides for various

---

[15] *LW Holdco V LLC v. Kelly Puls, Mark Haney and Chris Lyster*, Index No. 654747/2021, pending in the Supreme Court of the State of New York, County of New York (the "***New York Case***").
[16] Debtor's Brief at pg. 4–5, ¶ 13.
[17] Debtor's Brief at pg. 4, ¶ 12.
[18] Objection to Exemptions at pg. 7, ¶ 18; *see also* Debtor's Response at pg. 3, ¶ 18.
[19] Objection to Exemptions at pg. 7, ¶ 18; *see also* Debtor's Response at pg. 3, ¶ 18.
[20] Objection to Exemptions at pg. 7, ¶ 18; *see also* Debtor's Response at pg. 3, ¶ 18.
[21] Debtor's Brief at pg. 5, ¶ 23.
[22] *See In the Matter of the Marriage of Monika G. Cooper and Christopher Guy Lyster*, Cause No. CIV-22-0703, County Court at Law #2, Parker County, Texas (the "***Divorce Proceeding***"); *see also* Debtor's Brief at pg. 5, ¶ 14.
[23] Creditor Ex. 15. *See* Debtor's Brief at pg. 5, ¶¶ 15–18; *see generally*, testimony of Debtor [1:40:00].

indemnity and hold harmless agreements between Debtor and Ms. Cooper regarding their marital liabilities.

On September 8, 2023, an *Agreed Final Decree of Divorce*[24] was entered in the Divorce Proceeding, which provides in pertinent part:

> The Court finds that the community property of the parties has been divided and partitioned pursuant to the [Divorce] Agreement and the division of property is a just and right division.[25]
>
> . . .
>
> IT IS ORDERED AND DECREED that the community property of the parties has been divided and partitioned pursuant to the [Divorce] Agreement and that the division of property is a just and right division.[26]

Pursuant to the Divorce Agreement and Agreed Final Decree of Divorce, Ms. Cooper divested and conveyed all her right, title, and interest in the Meadow Hill Property and certain of the marital personal property to Debtor. Consequently, to evidence Ms. Cooper's divestment and conveyance of her right, title, and interest in the Meadow Hill Property to Debtor, she executed a *Special Warranty Deed*[27] which "grants, sells, and conveys to [Debtor] all of [Ms. Cooper's] interest in the [Meadow Hill Property]."[28] Additionally, Debtor executed a *Deed of Trust to Secure Assumption*[29] evidencing Debtor's agreement to indemnify and hold Ms. Cooper harmless from any failure by Debtor to satisfy the then existing mortgage debt on the Meadow Hill Property.[30] Likewise, Debtor divested and conveyed all his right, title, and interest in certain real property located in Colorado and other marital personal property to Ms. Cooper.

---

[24] Creditor Ex. 14; *see also* Debtor's Brief at pg. 5, ¶ 18.
[25] Creditor Ex. 14 at pg. 2, ¶ 5.
[26] Creditor Ex. 14 at pg. 2.
[27] Creditor Ex. 11.
[28] Creditor Ex. 11, pg. 2. The *Special Warranty Deed* was ultimately recorded in the real property deed records of Parker County on February 1, 2024. *See* Creditor Ex. 11 at pg. 5. *See also*, Creditor Ex. 15 at pg. 3, ¶ H-3.
[29] Creditor Ex. 12, pg. 2.
[30] Creditor Ex. 14 at pgs. 3–4, ¶ H-3.

Creditor contends that (i) Ms. Cooper "is an estate-planning lawyer";[31] (ii) "[t]he divorce was nothing more than an attempt to prevent Debtor's creditors from obtaining Debtor's assets";[32] and (iii) "Debtor gave to Ms. Cooper essentially all of his non-exempt property which totaled over $1.5 million in value."[33] Creditor, however, failed to offer sufficient credible evidence to prove-up its allegations.

Rather, the uncontroverted evidence presented during the hearing established that (i) the divorce was amicable; (ii) Debtor and Ms. Cooper continue to be co-owners of their law firm; and (iii) Ms. Cooper continues to stay at the Meadow Hill Property a week or two each month. These uncontroverted facts, standing alone, fail to prove that Debtor's and Ms. Cooper's divorce was, in fact, a facade or that they intended to hinder, delay, or defraud creditors by disposing of property that Debtor would not have been able to exempt in a subsequent bankruptcy filing. Consequently, Creditor failed to satisfy its burden of proof by a preponderance of the evidence that Debtor's claimed exemptions should be disallowed because Debtor and Ms. Cooper intended to hinder, delay, or defraud creditors through the division and partition of their marital assets in the Divorce Proceeding.[34]

Additionally, and more significantly, Creditor did not assert a § 522(o) objection to Debtor's claimed exemptions. Section 522(o) provides a ten-year look-back period to determine whether the debtor disposed of non-exempt property "with the intent to hinder, delay, or defraud a creditor."[35] Section 522(o) prevents a debtor from converting non-exempt property to exempt

---

[31] Creditor's Reply at pg. 2, ¶ 1.
[32] Creditor's Reply at pg. 3, ¶ 2.
[33] Creditor's Reply at pg. 2, ¶ 1.
[34] "The party objecting to an exemption in bankruptcy has the burden of proving by a preponderance of the evidence that the exemption is improper." *In re Cipolla*, 476 F. App'x 301, 305 (5th Cir. 2012); FED. R. BANKR. P. 4003(c) (burden of proof).
[35] 11 U.S.C. § 522(o).

property by disallowing an exemption to the extent of the value of the conversion.[36] Thus, a debtor who intended to defraud his or her creditors by either conveying away his or her interest in non-exempt property could lose the homestead exemption by that same amount. Again, Creditor did not timely assert a § 522(o) objection to Debtor's claimed exemptions, and the deadline to assert a § 502(o) objection has long since passed.[37]

### D.     Debtor's Bankruptcy Filing

On February 7, 2024 (the "***Petition Date***"), Debtor filed his Voluntary Petition for relief under Chapter 7 of the Bankruptcy Code.[38] Debtor testified that his bankruptcy filing was necessitated primarily due to the litigation costs to defend against Creditor's claim against him in the State Court Case.[39]

In his initial bankruptcy schedules, Debtor elected Texas state exemptions under 11 U.S.C. § 522(b)(3)[40] and claimed as his exempt property (i) his entire 100% ownership interest in the Meadow Hill Property as his homestead;[41] and (ii) various personal property.[42]

Although Debtor initially asserted that as of the Petition Date the "current value" of the Meadow Hill Property was $1.3 million subject to a $455,564.55 mortgage lien,[43] Debtor subsequently filed an *Amended Schedule A/B*[44] contending that the "current value" of the Meadow Hill Property was $950,000 as opposed to $1.3 million. On August 27, 2024, Creditor filed its

---

[36] *See Int'l Beauty Prods., LLC v. Beveridge (In re Beveridge)*, 416 B.R. 552, 581 (Bankr. N.D. Tex. 2009); *see also In re Anderson*, 374 B.R. 848, 857–60 (Bankr. D. Kan. 2007) (reversed on other grounds).
[37] FED. R. BANKR. P. 4003(b).
[38] Creditor Ex. 17.
[39] *See also* Debtor's Brief at pgs. 5–6, ¶¶ 20–21.
[40] *See also* Tex. Const. Art. 16 §§ 50, 51 and Tex. Prop. Code §§ 41.001–002.
[41] *Schedule C*, Creditor Ex. 17, pg. 19.
[42] *Schedule C*, Creditor Ex. 17, pgs. 19–22.
[43] *See Schedules A/B* and *D*, Creditor Ex. 17 at pgs. 9 and 23, respectively.
[44] ECF No. 46.

Creditor's Supplemental Objection[45] disputing Debtor's revised "current value" of the Meadow Hill Property. At the commencement of the hearing, however, Debtor and Creditor agreed to bifurcate the hearing and abate a determination of the disputed value of the Meadow Hill Property and its impact, if any, on the Homestead Objection until after the Court issued this ruling.

On June 13, 2024, Creditor filed a *Proof of Claim* in Debtor's bankruptcy case in the alleged amount of $5,121,303.03.[46]

On April 23, 2024, Creditor took a Rule 2004 examination of Debtor.[47]

On May 24, 2024, Creditor timely filed the Objection to Exemptions raising both the Homestead Objection and the Personal Property Objection.[48]

### III. CONCLUSIONS OF LAW

**A. The Homestead Objection**

Debtor claims as his exempt homestead 100% of his interest in the Meadow Hill Property.[49] Creditor objects to Debtor's claim that he is entitled to exempt his entire 100% interest in the Meadow Hill Property. Rather, Creditor contends that the value of the 50% community property interest in the Meadow Hill Property previously owned by Ms. Cooper—but acquired by Debtor within 1215 days of Debtor's Petition Date—is subject to the $189,050 cap under 11 U.S.C. § 522(p)(1).

---

[45] *LW Holdco V LLC's Objection to Debtor's Amended Schedule A/B and Supplement to LW Holdco V LLC's Amended Objection to Claimed Exemption of Debtor, Christopher Guy Lyster, In Homestead and Claimed Personal Property Exemptions*, ECF No. 53 (the "**Creditor's Supplemental Objection**").
[46] Creditor Ex. 19.
[47] *See* ECF No. 23; *see also* Objection to Exemptions at pgs. 10–11, ¶ 28 and Debtor's Brief at pg. 8, ¶ 32.
[48] The original deadline to file objections to Debtor's claimed exemptions was April 5, 2024. *See* ECF No. 4. Debtor, however, agreed to extend Creditor's deadline to file objections to Debtor's claimed exemptions to May 24, 2024. *See* ECF No. 21.
[49] *Schedule C*, Creditor Ex. 17.

To address the Homestead Objection, the Court must first determine if Debtor acquired "any amount of interest"[50] in the Meadow Hill Property during the 1215-days prior to the Petition Date. To answer this question, the Court must first turn to Texas state law to determine Debtor's and Ms. Cooper's interests in the Meadow Hill Property prior to and after their divorce.

### 1. *Texas Community Property Law Generally*

In Texas, all marital property is characterized as either community property, separate property, or mixed property.[51] Community property is property that is acquired or created during the marriage.[52] Although the Texas Family Code does not explicitly state that each spouse's interest in community property is an equal and undivided one-half beneficial interest in the whole, Texas case law makes that proposition clear.[53] Additionally, community property in Texas is presumed to be subject to each spouse's joint-management rights,[54] and such community property cannot be sold, conveyed, or encumbered without both spouses joining in the transaction.[55]

### 2. *Partition of Community Property in a Divorce Proceeding Under Texas Law*

When a Texas marriage is being dissolved in a divorce, the state court is required to divide and partition the community property estate between the soon to be ex-spouses.[56] Although during

---

[50] 11 U.S.C. § 522(p)(1).
[51] Eileen Gaffney & Randall B. Wilhite, *O'Connor's Texas Family Law Handbook* Ch. 2, § 2 "Marital property defined" (2025 ed.); *see also Hilley v. Hilley*, 342 S.W.2d 565, 567 (Tex. 1961) (community or separate); *Gleich v. Bongio*, 99 S.W.2d 881, 883 (Tex. 1937) (mixed).
[52] Gaffney & Wilhite, *O'Connor's Texas Family Law Handbook* Ch. 2, § 2.2 "Community property" (2025 ed.).
[53] *See* Tex. Fam. Code Ann. § 7.001; *see also In re Wald*, 2012 Bankr. LEXIS 2552, 2012 WL 2049429, at *2 (Bankr. W.D. Tex. 2012) (citing *Burnham v. Hardy Oil Co.*, 108 Tex. 555, 564, 195 S.W. 1139 (Tex. 1917)); *Free v. Bland*, 369 U.S. 663, 664, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962).
[54] *Shiffers v. Est. of Ward*, 762 S.W.2d 753, 756 (Tex.App.—Fort Worth 1988, writ denied).
[55] Tex. Fam. Code § 5.001; *Washington-Jarmon v. OneWest Bank*, 513 S.W.3d 103, 110 (Tex. App.—Hous. [14th Dist.] 2016, no pet.); *Geldard v. Watson*, 214 S.W.3d 202, 207 (Tex. App.—Texarkana 2007, no pet.); *City of Emory v. Lusk*, 278 S.W.3d 77, 85 (Tex.App.—Tyler 2009, no pet.); *Jean v. Tyson-Jean*, 118 S.W.3d 1, 5 (Tex.App.—Hous. [14th Dist.] 2003, pet. denied).
[56] *See* Tex. Fam. Code Ann. § 7.001 (just and right division of the community estate); 7.002 (confirmation of each spouses' separate property); *see also Cameron v. Cameron*, 641 S.W.2d 210, 214 (Tex. 1982); *Hailey v. Hailey*, 331 S.W.2d 299, 302–03 (Tex. 1960); *Forgason v. Forgason*, 911 S.W.2d 893, 895–96 (Tex. App.—Amarillo, 1995, writ denied).

marriage each spouse owns an equal and undivided one-half beneficial interest in all community property, each spouse is not necessarily entitled to half the community estate when the marriage ends in divorce. Instead, the state court is required to make a "just and right" division of the community estate.[57] Ultimately, the state court must award ownership title for each community property asset to either spouse as his or her separate property, or jointly to both spouses as joint tenants or tenants-in-common.[58] The effect of the division and partition of the community property is to vest each spouse with the exclusive ownership and right of possession over the specific property being awarded to that particular spouse as his or her separate property.[59]

After a divorce decree is finalized, the parties generally take an additional step to evidence the division and divestiture of the ex-spouse's prior community property interest in the property. For real property, it is most common to evidence the division and partition through a special-warranty deed whereby the ex-spouse divest and conveys his or her right, title, and interest in the real property to the ex-spouse. Then, the special warranty deed is filed in the county real property records where the real property is located.[60]

### 3. Debtor Acquired Ms. Cooper's 50% Community Property Interest in the Meadow Hill Property through the Divorce Proceeding

In 2012, Debtor and Ms. Cooper moved into the Meadow Hill Property as their principal residence and homestead. Under Texas law, prior to their divorce, the Meadow Hill Property constituted Debtor's and Ms. Cooper's jointly managed community property. Consequently,

---

[57] *See* Tex. Fam. Code Ann. § 7.001; *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985).
[58] *See* Tex. Fam. Code Ann. § 7.001; *see also* Gaffney & Wilhite, *O'Connor's Texas Family Law Handbook* Ch. 7-A, § 7 "Dividing community assets & liabilities" (2025 ed.).
[59] *Hailey v. Hailey*, 331 S.W.2d 299, 303 (Tex. 1960); *Garza v. Cavazos*, 221 S.W.2d 549, 552 (Tex. 1949); *Forgason v. Forgason*, 911 S.W.2d 893, 896 & n.3 (Tex. App.—Amarillo, 1995, writ denied).
[60] Gaffney & Wilhite, *O'Connor's Texas Family Law Handbook* Ch. 7-B, § 10.2(1) (2025 ed.). *See also* Rothschild, *Real Estate Transfers—What Do those Documents Mean?*, Marriage Dissolution Institute, State Bar of Texas CLE, ch. 18, pg. 3 (2018).

10

Debtor and Ms. Cooper each held an undivided 50% equity ownership interest in the Meadow Hill Property.

Through the Divorce Agreement and Agreed Final Decree of Divorce, Ms. Cooper was divested of her 50% undivided ownership interest in the Meadow Hill Property. Consequently, as is customary in Texas, Ms. Cooper executed the Special Warranty Deed conveying her right, title, and 50% equity interest in the Meadow Hill Property to Debtor.[61] Following the conveyance, Debtor then held 100% ownership interest in the Meadow Hill Property with the absolute right and ability to sell, convey, or encumber the Meadow Hill Property. Therefore, based on controlling Texas law, the Court finds and concludes that Debtor acquired Ms. Cooper's 50% undivided ownership interest in the Meadow Hill Property within 1215 days of the Petition Date.

### 4. *Application of § 522(p)(1) to the Homestead Objection*

Section 522(p)(1) reads, in relevant part:

> [A]s a result of electing under subsection (b)(3)(A) to exempt ***property*** . . ., a debtor may not exempt ***any amount of interest*** that was ***acquired by the debtor*** during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $189,050[62] in value in—
> . . .
> (D) real or personal property that the debtor . . . claims as a homestead.[63]

The key inquiry before the Court is whether Debtor's acquisition of Ms. Cooper's 50% undivided ownership interest in the Meadow Hill Property within 1215 days of the Petition Date constitutes an "interest that was acquired by the debtor" within the meaning of § 522(p)(1). When determining whether a debtor has acquired an "interest" in property that is subject to § 522(p)(1), courts have applied two different theories.

---

[61] Creditor Ex. 11.
[62] The original cap in § 522(p) was $125,000, but the cap is adjusted at each 3-year interval ending on April 1 under 11 U.S.C. § 104.
[63] 11 U.S.C. § 522(p)(1) (emphasis added).

11

a. *Title Theory vs. Equity Theory*

Debtor contends that the word "interest" refers to an unquantifiable title or fee interest in the property (the "**Title Theory**"). Thus, Debtor contends that since he initially acquired title to the Meadow Hill Property more than a decade prior to his bankruptcy filing, the "interest" he acquired was outside the required 1215-day timeline required by § 522(p)(1). Consequently, Debtor contends the Homestead Objection must be overruled.

Creditor, on the other hand, contends that the term "interest" refers to a legal or equitable interest in the property that can be acquired and quantified by a monetary figure (the "**Equity Theory**"). Thus, Creditor contends that because Debtor "acquired" Ms. Cooper's 50% equity interest in the Meadow Hill Property through the Divorce Proceeding—well within 1215-days of the Petition Date—Debtor's newly acquired 50% equity interest in the Meadow Hill Property is subject to the homestead exemption cap in § 522(p)(1). Consequently, Creditor contends the Homestead Objection must be sustained.

Courts across the country are split on (i) whether § 522(p)(1) is clear on its face or ambiguous requiring consideration of external sources to determine the application and intent of § 522(p)(1);[64] and (ii) which theory—the Title Theory or the Equity Theory—applies in a §

---

[64] Some courts have found § 522(p)(1) to be clear and unambiguous on its face. *See e.g.*, *Wallace v. Rogers (In re Rogers)*, 513 F.3d 212, 226 (5th Cir. 2008) (hereinafter, "**Rogers II**"); *Wallace v. Rogers (In re Rogers)*, 354 B.R. 792, 796 (N.D. Tex. 2006) (hereinafter, "**Rogers I**"); *In re Presto*, 376 B.R. 554, 576 (Bankr. S.D. Tex. 2007). Whereas other courts have found § 522(p)(1) to be ambiguous requiring those courts to review external sources to determine the meaning and intent of § 522(p)(1). *See e.g.*, *In re Greene*, 583 F.3d 614, 622 (9th Cir. 2009); *In re Reinhard*, 377 B.R. 315, 319–20 (Bankr. N.D. Fla. 2007); *In re Rasmussen*, 349 B.R. 747, 758 n. 6 (Bankr. M.D. Fla. 2006); *In re Blair*, 334 B.R. 374, 376 (Bankr. N.D. Tex. 2005).

12

522(p)(1) analysis.[65] These issues were addressed by the Fifth Circuit Court of Appeals in *Rogers II*.[66]

In *Rogers II*, the debtor had acquired title to real property outside the 1215-day statutory period in § 522(p)(1), but within the 1215-day period, the debtor designated the real property as her homestead. Although the Fifth Circuit ultimately concluded that a homestead designation, itself, did not constitute an "interest" that was acquired by the debtor,[67] the Fifth Circuit addressed the disputes and conflicting case law analyzing § 522(p)(1).[68]

First, the Fifth Circuit agreed with the district court's conclusion in *Rogers I*[69] that § 522(p)(1) is clear on its face and not ambiguous.[70] But, the Fifth Circuit noted that, "[e]ven assuming that § 522(p)(1) is ambiguous, the legislative history makes clear that the term 'interest' refers to some vested economic interest in property acquired during the statutory period, not a homestead interest."[71]

Second, the Fifth Circuit recognized that the lower courts in *Rogers* disagreed on the proper theory to apply to the term "interest" in § 522(p)(1)—the bankruptcy court adopted the Title Theory, whereas the district court adopted the Equity Theory.[72] In adopting the Title Theory, the bankruptcy court concluded that, because the debtor had acquired title to the property outside the

---

[65] Some courts applied the Title Theory to the term "interest" in § 522(p). *See e.g.*, *In re Greene*, 583 F.3d at 624–25; *In re Aroesty*, 385 B.R. 1, 7 (1st Cir. BAP 2008); *In re Blair*, 334 B.R. 374, 376–77 (Bankr. N.D. Tex. 2005). Whereas, other courts applied the Equity Theory to the term "interest" in § 522(p)(1). *See e.g.*, *Rogers I*, 354 B.R. 792, 796 (N.D. Tex. 2006)); *Soulé v. Willcut (In re Willcut)*, 472 B.R. 88, 96 (1st Cir. BAP 2012); *In re Presto*, 376 B.R. at 576.
[66] *Rogers II*, 513 F.3d 212 (5th Cir. 2008).
[67] *Rogers II*, 513 F.3d at 227.
[68] *Rogers II*, 513 F.3d at 217–22.
[69] *Rogers I*, 354 B.R. 792, 796 (N.D. Tex. 2006) ("[a]s a threshold matter, the court finds the language of § 522(p) to be unambiguous").
[70] *Rogers II*, 513 F.3d at 226 ("[t]he statute is not ambiguous as to whether a homestead interest is covered by § 522(p)(1)").
[71] *Rogers II*, 513 F.3d at 226.
[72] *Rogers II*, 513 F.3d at 217–18; *see also Rogers I*, 354 B.R. at 796.

13

1215-day period in § 522(p)(1), the § 522(p)(1) cap did not apply. On appeal, the district court disagreed with the bankruptcy court's adoption of the Title Theory and instead applied the Equity Theory concluding that the term "interest" in § 522(p)(1) means "some legal or equitable interest that can be quantified by a monetary figure."[73] In addition to analyzing both lower courts' reasoning, the Fifth Circuit also analyzed other courts' opinions addressing the Title Theory versus Equity Theory dispute.[74]

In its analysis, the Fifth Circuit noted concerns and flaws with both theories. For example, the Fifth Circuit observed:

> Those courts adopting the equity definition have been forced to address complex issues regarding passive and active equity appreciation during the 1,215-day period. . . . In contrast, those courts adopting the title definition have crafted an easily-applied rule *that is arguably in conflict with the statutory language* indicating that the term "interest" refers to a quantitative or monetary value.[75]

Ultimately, however, the Fifth Circuit chose not to adopt either theory, concluding "it [is] unnecessary at this time to pick a side in the title versus equity debate."[76] Although the Fifth Circuit did not officially "pick a side in the title versus equity debate[,]" the statements and observations made by the Fifth Circuit in *Rogers II* seem to favor the Equity Theory as the more persuasive theory. For example, the Fifth Circuit noted that the Title Theory "is arguably in conflict with the statutory language indicating the term 'interest' refers to a quantitative or monetary value."[77] Further, as more evidence of an indication that the 5th Circuit finds the Equity Theory more persuasive, the Fifth Circuit noted:

> The legislative history indicates that Congress was concerned with the acquisition of vested economic interests in property during the statutory

---

[73] *Rogers II*, 513 F.3d at 217 (quoting *Rogers I*, 354 B.R. at 796).
[74] *Rogers II*, 513 F.3d at 218–22.
[75] *Rogers II*, 513 F.3d at 221 (emphasis added).
[76] *Rogers II*, 513 F.3d at 222.
[77] *Rogers II*, 513 F.3d at 222.

14

period. . . . The statutory text and legislative history indicate that the term "interest" refers to vested economic interests in the property that were acquired by the debtor within the 1,215-day period preceding the filing of the petition.[78]

Finally, the Fifth Circuit positively cited *Presto* noting that, "[r]ecently, a bankruptcy court addressed the issue of whether acquiring an ex-spouse's community property interest in the homestead property is a form of active equity appreciation that is subject to § 522(p)(1)."[79]

b. *In re Presto*

Although several published opinions and well-respected commentary have discussed and analyzed the Title Theory versus the Equity Theory debate, it appears that the *Presto* decision is the only published opinion that addresses the specific fact scenario before this Court—"whether a spouse's community property interest in a homestead is a type of 'interest' that can be 'acquired' by a division of property resulting from a divorce decree."[80]

In *Presto*, the bankruptcy court applied the Equity Theory and concluded:

> [T]he interest that was acquired by [husband] from [wife] as a result of their divorce had a definite, ascertainable monetary value. . . . Prior to the divorce, [husband] shared a community property interest in the [homestead] with [wife]. As a result of the Divorce Decree, the [homestead] became the [husband's] sole and separate property. He went from owning a half interest in the undivided whole to owning the entire property in fee simple. Therefore, the monetary value of [wife's] community property interest is equal to half of the total value of the [homestead] on the date of the divorce.[81] . . . The Divorce Decree resulted in a transaction whereby [husband] conveyed his rights to non-exempt property in exchange for greater rights in an exempt homestead. The underlying transaction was an increase in the monetary value in [husband's] interest in the [homestead]. Therefore, the Court finds that the community property interest acquired by [husband] in the Divorce Decree had a monetary value, and is subject to § 522(p).[82] . . . As a result of the Divorce Decree, [wife] executed a Special

---

[78] *Rogers II*, 513 F.3d at 227.
[79] *Rogers II*, 513 F.3d at 222 ("[i]f the Forney Property had constituted the community property of the debtor and her husband, the Wallace's argument might have some merit.").
[80] *In re Presto*, 376 B.R. at 576.
[81] *In re Presto*, 376 B.R. at 577.
[82] *In re Presto*, 376 B.R. at 578.

> Warranty Deed with Assumption which granted [husband] all of her rights in the [homestead]. This act resulted in the legal title to the [homestead] changing after the divorce. Thus, . . . [wife's] community property interest qualifies as an 'interest' under § 522(p).[83] . . . The Court finds that [husband] actively acquired [wife's] community property interest in the [homestead] through the Divorce Decree. . . . [I]t is the Divorce Decree that this Court finds to have been an active acquisition.[84]

Debtor, however, contends that the *Presto* court's analysis and conclusions are flawed, and this Court should not adopt or follow *Presto*. First, Debtor contends that the Fifth Circuit did not specifically adopt *Presto* in *Rogers II* and *Presto* is nonbinding on this Court.[85] The Court acknowledges that the Fifth Circuit did not specifically adopt *Presto* as the controlling law in this circuit concerning the Title Theory versus Equity Theory debate and that *Presto* is not binding on this Court. But it is also noteworthy that the Fifth Circuit did not question or criticize *Presto*. Thus, Debtor's first contention is not persuasive and fails to establish that *Presto* is flawed and should not be followed.

Second, Debtor contends that *Presto* "stands in factual contrast when compared to the facts in this case."[86] Again, the Court acknowledges that *Presto* contained significant facts not relevant in this case. But the facts in *Presto* that are relevant to the narrow issue before this Court are directly on point—whether the debtor's acquisition of his ex-spouse's community property interest in the homestead constitutes the acquisition of "an amount of interest" by the debtor within the meaning of § 522(p)(1). Thus, Debtor's second contention that *Presto* "stands in factual contrast" to this case is not persuasive.

---

[83] *In re Presto*, 376 B.R. at 578.
[84] *In re Presto*, 376 B.R. at 579.
[85] Debtor's Brief at pgs. 14, 20.
[86] Debtor's Brief at pgs. 14, 18–20.

16

Third, *Presto* held that "any interest the Debtor acquired through the Divorce Decree is not protected by § 522(p)(2)(B)."[87] Debtor contends that the *Presto* court "failed to recognize that a divorce proceeding via a divorce decree is a legitimate vehicle for establishing" entitlement to the § 522(p)(2)(B) exception to § 522(p)(1).[88]

Section 522(p)(2)(B) states:

> For purposes of paragraph (i), any amount of such interest does not include any interest transferred from a debtor's *previous principal residence* (which was acquired prior to the beginning of such 1215-day period) into the debtor's *current principal residence*, if the debtor's previous and current residences are located in the same State.[89]

Thus, Debtor contends that the Divorce Agreement and Agreed Final Decree of Divorce *transformed* the Meadow Hill Property from his "previous principal residence" into his "current principal residence." In support of this *transformation* proposition, Debtor argues:

> The nature of the ownership of [his] 'previous principal residence' before the divorce was [an] undivided community property interest. After a just and right division in the Divorce Proceeding, [Ms.] Cooper was divested of her interest in the Meadow Hill Property. The divestiture changed [Debtor's] interest to a fee simple ownership. [Debtor] before divorce had possession of 100% of Meadow Hill Property and after the divorce that 100% possession continued. The fact that both the 'previous principal residence' and the 'current principal residence' have the same physical address in Texas, should not result in one losing his or her homestead protection because of a divestiture in a divorce proceeding.

Debtor cites no authority in support of his *transformation* theory to bring the Meadow Hill Property within the § 522(p)(2)(B) exception. Additionally, Debtor's interpretation of § 522(p)(2)(B) is contrary to the plain reading of the statute and case law, which suggests that the "previous" residence (acquired outside the 1215-day period) was sold, and then the sale proceeds from the previous residence are rolled over and used within the 1215-day period to acquire the

---

[87] *In re Presto*, 376 B.R. at 576.
[88] Debtor's Brief at pgs. 21–22.
[89] 11 U.S.C. § 522(p)(2)(B) (emphasis added).

"current" residence.[90] Moreover, § 522(p)(2)(B) requires that "the debtor's previous and current *residences*" be located in the same state, which again suggests two different residences. Thus, the Court concludes that Debtor's contention that he is entitled to the § 522(p)(2)(B) exception to § 522(p)(1) is not persuasive and lacks merit.

Based on the Court's detailed review and analysis of *Presto*, the Court finds and concludes that the *Presto* court's analysis and application of § 522(p) is well-reasoned, sound, and persuasive. Thus, the Court finds and concludes that Debtor's argument—that *Presto* is flawed and should not be follow—lacks merit.

### 5. *Conclusion Regarding Homestead Objection*

For all of the foregoing reasons and based on the Court's review and careful consideration of the Homestead Objection, Debtor's Response, Debtor's Brief, Creditor's Reply, testimony of Debtor, exhibits admitted into evidence, and the arguments of counsel, the Court finds and concludes that Creditor's Homestead Objection is **SUSTAINED**, in part, solely to the extent that the value of Ms. Cooper's 50% community property interest in the Meadow Hill Property that Debtor acquired within 1215-days of the Petition Date exceeds $189,050.

A hearing (the "***Valuation Hearing***") will be set to determine (i) the value of Ms. Cooper's 50% community property interest in the Meadow Hill Property that Debtor acquired within the 1215-day period under § 522(p)(1); and (ii) if such determined value exceeds $189,050.

---

[90] *See Rogers I*, 354 B.R. at 797 (§ 522(p)(2)(B) "allows for a roll-over of interest transferred from the sale of a debtor's previous homestead . . . and used the proceeds to purchase a new homestead within the same state . . . ."); *In re Blair*, 334 B.R. 374, 377 (Bankr. N.D. Tex. 2005) ("rollover by debtors of the equity in one home to another home located in the same state. A debtor is not subject to the homestead cap if he takes the proceeds of his first residence and reinvests them in a second residence."); *In re Summers*, 344 B.R. 108, 112 (Bankr. D. Ariz. 2006).

B.      **Personal Property Objection**

Federal Rule of Bankruptcy Procedure 4003(a) provides "[a] debtor shall list the property claimed as exempt under § 522 of the Code on the schedule of assets required to be filed by Rule 1007."[91] Debtor's claimed exemptions were timely filed by Debtor.[92] Creditor argues, however, that Debtor failed to adequately describe or attach individual values to the personal property items claimed as exempt.[93] The Court disagrees.

First, the Court finds that Debtor's *Schedule A/B* and *Schedule C* provide sufficient detail of Debtor's personal property and claimed exemptions to put the Chapter 7 Trustee, creditors, and parties-in-interest on notice of questionable exemption claims. Second, Creditor filed a Rule 2004 Motion[94] seeking, in part, "information related to Debtor's assets [and] potential objections to Debtor's claims of exemptions."[95] The Court granted Creditor's Rule 2004 Motion[96] and, thereafter, on April 23, 2024, Creditor extensively examined Debtor. Finally, Creditor failed to offer any credible evidence to satisfy its burden to prove by a preponderance of the evidence that Debtor's claimed personal property exemptions should be disallowed.[97] The mere filing of an objection is not controverting evidence, and without controverting evidence, the sworn schedules carry the day.

For all the foregoing reasons and based on the Court's review and careful consideration of the Personal Property Objection, Debtor's Response, Debtor's Brief, Creditor's Reply, testimony

---

[91] FED. R. BANKR. P. 4003(a).
[92] Creditor Ex. 17, pgs. 10–23.
[93] Objection to Exemptions at pgs. 18–19, ¶¶ 41–42; Creditor's Reply at pg. 19, ¶¶ 27–28.
[94] *Motion for Order Directing Agreed Examination of Debtor and Production of Documents Pursuant to Bankruptcy Rule 2004*, ECF No. 15 (the "**Rule 2004 Motion**").
[95] ECF No. 15 at pg. 4, ¶ 12.
[96] ECF No. 17.
[97] The party objecting to an exemption in bankruptcy has the burden of proving by a preponderance of the evidence that the exemption is improper. *In re Cipolla*, 476 F. App'x 301, 305 (5th Cir. 2012); FED. R. BANKR. P. 4003(c) (burden of proof).

of Debtor, exhibits admitted into evidence, and the arguments of counsel, the Court finds and concludes that Creditor's Personal Property Objection is **OVERRULED**, and Debtor's claimed personal property exemptions are **GRANTED**.

### IV.    CONCLUSION

For all the foregoing reasons, it is, hereby, **ORDERED** as follows:

i. Creditor's Homestead Objection is **SUSTAINED**, in part, solely to the extent that the value of Ms. Cooper's 50% community property interest in the Meadow Hill Property acquired by Debtor within 1215-days of the Petition Date exceeds $189,050;

ii. Debtor's Homestead Exemption for his 50% community property interest in the Meadow Hill Property that he had acquired prior to 1215-days of the Petition Date is **GRANTED**, in full;

iii. Creditor's Personal Property Objection is **OVERRULED**, and Debtor's claimed Personal Property Exemptions are **GRANTED**, in full;

iv. Debtor and Creditor shall meet and confer to set the date and time for the Valuation Hearing related to the Homestead Objection; and

v. This Memorandum Opinion and Order constitutes an interlocutory order subject to the entry of a final order following the Valuation Hearing.

### ### END OF ORDER ###